**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MELISSA LITTLEJOHN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Commissioner of Social Security | : | NO. 22-4678 |

**O P I N I O N**

SCOTT W. REID                                              DATE:  July 17, 2023
UNITED STATES MAGISTRATE JUDGE

Melissa Littlejohn brought this action under 42 U.S.C. § 405(g) to obtain review of the

decision of the Commissioner of Social Security denying her claim for Disability Insurance

Benefits ("DIB") and Supplemental Security Income ("SSI").  She has filed a Request for

Review to which the Commissioner has responded.  As explained below, I conclude that the

Request for Review should be denied and judgment entered in favor of the Commissioner.

I.      *Factual and Procedural Background*

Littlejohn was born on June 13, 1980.  Record at 345.  She obtained a GED.  Record at

406.  She worked in the past as a home health aide.  Record at 406.  On September 13, 2018,

Littlejohn filed applications for DIB and SSI, alleging disability as of July 11, 2018, as a result of

narcolepsy, insomnia, agoraphobia, panic attacks, major depression, asthma, migraine headaches,

Vitamin D deficiency, bilateral carpal tunnel syndrome, chronic neck pain, and post-

inflammatory hyperpigmentation.  Record at 345, 405.

Littlejohn's applications were denied on December 20, 2018. Record at 184, 189.

Because the case was randomly selected to test modifications to the disability determination

process, there was no administrative review.  *See* Commissioner's Response at 2, n. 2.  Instead,

Littlejohn was able to proceed directly to a hearing *de novo* before an Administrative Law Judge ("ALJ").  Record at 194, 197.  A hearing was held in this case on June 12, 2019.  Record at 76.  On August 28, 2019, the ALJ issued a written decision denying benefits.  Record at 152.  On February 22, 2021, however, the Appeals Council remanded the case to the ALJ for further action.  Record at 171.

In accordance with the remand from the Appeals Council, the ALJ held a second hearing in this case on June 7, 2021.  Record at 45.  In a decision dated July 13, 2021, however, he once again denied benefits.  Record at 15.  This time, the Appeals Council denied Littlejohn's request for review on October 5, 2022, permitting the ALJ's second decision to stand as the final decision of the Commissioner of Social Security.  Record at 1.  Littlejohn then filed this action.

II.      *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985).  Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision. *Richardson v. Perales*, *supra*, at 401.  A reviewing court must also ensure that the ALJ applied the proper legal standards.  *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  42 U.S.C. §423(d)(1).  As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

(i) At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled.  (ii)  At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.  (iii)  At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record.  *Id.*  The RFC assessment reflects the most an individual can still do, despite any limitations.  SSR 96-8p.

The final two steps of the sequential evaluation then follow:

(iv)  At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.  (v)  At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make the adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

III.  *The ALJ's Decision and the Claimant's Request for Review*

In his July 13, 2021, decision, the ALJ determined that Littlejohn suffered from the severe impairments of cervical and lumbar degenerative disc disease; asthma; bilateral carpal tunnel syndrome; status post-ankle surgery; synovitis and tenosynovitis of the right ankle; migraines; a major depressive disorder; post-traumatic stress disorder; and agoraphobia with panic disorder.  Record at 18.  He determined that none of these impairments, and no

combination of impairments, met or medically equaled the severity of one of the listed

impairments.  Record at 20-25.

      The ALJ assessed Littlejohn's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work … except:  can never climb ladders, ropes, or scaffolds; stoop, kneel, crouch, and crawl occasionally; must avoid concentrated exposure to extreme heat, extreme cold, pulmonary irritants, and poor ventilation; must avoid any exposure to unprotected heights and moving mechanical parts; bilateral handling and fingering is limited to frequent; can perform simple, routine tasks; no more than occasional interaction with supervisors and the general public, but would be able to have frequent interaction during a 30-day training period; can work in close proximity to others, but with only brief, incidental interaction with others and no tandem job tasks requiring cooperation with other workers to complete the task; can never travel as part of her job function, such as a courier or delivery driver; and low stress work, which is defined as routine work with no more than occasional changes in the work.

Record at 25.

      Relying on the testimony of a vocational expert who appeared at the hearing, the ALJ

decided that Littlejohn could not return to her prior work, but could work as a bench assembler,

inspector, or office helper.  Record at 36.  He concluded, therefore, that she was not disabled.

Record at 36-7.

      In her Request for Review, Littlejohn argues that the ALJ erred in concluding that she

could frequently interact with a supervisor during a 30-day training period, when she was

otherwise limited to occasional interaction.  She also maintains that the ALJ failed to fully

account for her migraine headaches in the RFC assessment.

IV.    *Discussion*

    A.    *Interaction With a Supervisor*

As above, Littlejohn argues that it was erroneous for the ALJ to find that she could have "frequent" interaction with a supervisor during a 30-day training period, after finding in the RFC assessment that she was limited to "no more than occasional interaction" with a supervisor.  She points out that an RFC assessment sets forth the *maximum* a claimant can do.  20 C.F.R. §404.1545.  She argues that she could not, therefore, be found capable of doing more than that, even for a short period.

As the Commissioner points out, however, several courts in this Circuit have considered this issue, and all have concluded that an ALJ's decision that a claimant can have only occasional interaction with supervisors, coworkers, and the public is not undermined by the fact that a job requires a training period of up to 30 days which might require more interaction. *Horos v. Kijakazi*, Civ. A. No. 21-1803, 2023 WL 2742754 at *3 (M.D. Pa. Mar. 31, 2023) (ALJ affirmed  where "despite a brief initial period of more than occasional interaction, the jobs identified by the vocational expert and ALJ here require no more than occasional interaction in general"); *Drozd v. Kizakaji*, Civ. A. No. 21-2063, 2023 WL 122387 (M.D. Pa. Jan. 6, 2023) (holding that remand was not compelled when "the fact that the brief training period … might involve more than occasional contact in the first weeks on the job does not undermine the ALJ's decision in a material way"; *Rebecca L. v. Comm'r of Social Security*, 617 F. Supp. 3d 526, 272-3 (D.N.J. 2022) ("[A]n interaction level that briefly exceeds Plaintiff's RFC during a probationary training period for unskilled positions is not reversible error").

Littlejohn replies that the ALJ's decision here is distinguishable from *Drozd*, and presumably the other cases, because in *Drozd*, there was only "a mere possibility" that an initial training for the jobs indicated *might* "involve more than occasional contact in the first weeks on the job," whereas in her case the ALJ specified that she was capable of frequent interaction for a 30-day period.  *Reply*, at 3, *citing* 2023 WL 122387 at *9.

This is not a meaningful distinction.  The ALJ in Littlejohn's case, like the ALJ in *Drozd*, could not know exactly how long the training period would be for a specific job, or what level of contact it would involve.  However, the training requirements for unskilled work can require "[a]nything beyond a short demonstration up to and including 1 month."  *Drozd* at 2023 WL 122387 at *5, *citing* Dictionary of Occupational Titles, Appendix C-Components of the Definition Trailer, 1991 WL 688702.  For this reason, both ALJs assumed that a 30-day training period was a possibility.

What is meaningful is that Littlejohn's ALJ, like those in *Drozd*, *Horos*, and *Rebecca L.*, concluded that, even if 30 days of training was required, this would not undermine Littlejohn's ability to perform the job, provided that the job was limited to only occasional interaction with a supervisor after the initial training period.

The undersigned is persuaded that the approach taken by the Middle District of Pennsylvania and the District of New Jersey is realistic, in the absence of any specific evidence that a claimant could not complete a 30-day training period.  Littlejohn has not pointed to specific evidence on this point, and none is apparent on the record.  On the contrary, as the Commissioner points out, Littlejohn has represented herself as getting along "okay" with

authority figures, and as never having lost a job due to problems getting along with others.[1]

Record at 463.  Accordingly, she has not shown that the ALJ erred in this respect.

      B.    *Migraine Headaches*

      As above, the ALJ acknowledged that Littlejohn's migraine headaches constituted a

severe impairment.  Record at 18.  He wrote:  "Due to her asthma and migraines, the claimant

should avoid concentrated exposure to extreme heat and cold, pulmonary irritants and poor

ventilation," and he included those limitations in his RFC assessment.  Record at 25, 34.

Littlejohn argues that the ALJ underestimated the severity of her headaches and her need to lie

down in a dark, quiet room to relieve them.

      First, Littlejohn maintains that the ALJ erred in failing to evaluate her migraines in

accordance with Listing 11.02, which pertains to epilepsy, arguing that SSR 19-4p provides that

"an ALJ *must* consider it when evaluating a claimant with migraines."  (Italics supplied).  This is

untrue.  In fact, SSR 19-14 provides:

> Primary headache disorder is not a listed impairment in the Listing of Impairments
> (listings); however, we *may* find that a primary headache disorder, alone or in
> combination with another impairment(s), medically equals a listing.

> Epilepsy (listing 11.02) is the most closely analogous listed impairment for an MDI
> [medically determinable impairment] of a primary headache disorder.  *While uncommon*,
> a person with a primary headache disorder *may* exhibit equivalent signs and limitations to
> those detailed in listing 11.02 … and we *may* find that his or her MDI(s) medically equals
> a listing.

2019 WL 4169635 at *7.  (Brackets and italics supplied).  Thus, it was within the ALJ's

discretion whether or not to analyze Littlejohn's migraines with reference to Listing 11.02.

---

[1] In her Disability Report, Littlejohn stated that she stopped working at the end of 2015 "because of [her] condition[s]", without specifying which conditions.  Record at 953.  However, it is also certainly relevant that Littlejohn pled guilty on October 1, 2015, to fraudulent billing and theft by deception for submitting overlapping timesheets and was sentenced to five years' monitored probation.  Record at 953, 1180.

Nevertheless, Littlejohn also argues that – regardless of the listing analysis – the ALJ erred in failing to recognize that her headaches caused her work-preclusive limitations because they would cause her to need to lie in a dark and quiet room many times during the workweek. This presents a more complex question than her allegation as to SSR 19-14, since there is significant record evidence of frequent and debilitating headaches.

At her hearing, Littlejohn testified that she suffered from a migraine headache every day. Record at 56.  Every other day, she needed to lie down in a dark room for her headache.  Record at 56-7.  The duration of her migraine headaches was variable, but the average length was from two to three weeks.  Record at 57.  Neither medication nor Botox treatments were effective. Record at 56, 57.

Littlejohn made similar representations to her treating neurologists.  For example, a June 6, 2019, note from Jon Rosenberg, MD, at Penn Medicine states:

> I saw Ms. Littlejohn in neurologic follow up today for headaches and neck pain with hyperreflexia.  She suffers from migraines, along with [cervical] spine disk disease.  Her migraines were initially controlled with MAXALT and Topamax though she was switched to Imitrex and Nortriptyline which initially improved her symptoms.  She now complains of a new daily headache characterized by bilateral frontal pain with several red flag symptoms including waking her up at night and not relieved with breakthrough medications.

Record at 1676-7.  Nowhere in the record does Littlejohn claim that her migraines were brought on by exposure to heat or cold, pulmonary irritants or poor ventilation, so it is difficult to see how the accommodations offered by the ALJ in his RFC assessment would be helpful.

At the same time, however, Littlejohn's representations to the ALJ and to her neurologist about the frequency and severity of her headaches are inconsistent with other evidence of record where she does not mention disabling headaches, even though she would be expected to do so.

When Littlejohn was asked for information about her "illnesses, injuries, or conditions" in the Function Report she completed as part of her application for benefits, she wrote:

> I can't lift or stand long.  I sleep all day due to my medication.  It's very hard to concentrate and stay focused.  I have multiple appointments weekly with doctors and therapist.  I currently have a home care worker to assist me at home.

Record at 419.  She did not mention her migraines.

Similarly, Littlejohn did not mention staying in bed every other day because of migraine headaches to independent examining expert Elisabeth Gibbings, Psy.D. on December 10, 2018. Record at 951.  Although the interview with Dr. Gibbings was for the purpose of assessing Littlejohn's mental impairments, it is surprising that the migraines did not come up if they limited her activities as much as she later testified.  Littlejohn told Dr. Gibbings that she "struggle[d] to leave the house," but attributed this to panic attacks and other psychological symptoms.  Record at 953.  In describing her "mode of living" to Dr. Gibbings, Littlejohn did claim to be almost entirely dependent on her home care aide, but did not mention headaches, as distinguished from her orthopedic impairments.  Record at 955.

Nor did Littlejohn's therapy records include a mention of spending hours in a darkened room because of migraines.  It is true that Littlejohn told her therapist on December 10, 2019, that she suffered from "chronic pain and other non-life-threatening but irritating health issues." Record at 1083.  She mentioned anxiety caused by her medical problems.  Record at 1085. However, on the same day, she told her therapist that her therapy goals were "not to be depressed anymore and have a healthy relationship" with her children and her romantic partner, with no mention of being housebound by disabling headaches.  Record at 1181.  On the contrary, in an assessment completed by her mental health provider between August and October, 2020, Littlejohn said that the reason she did not like to leave the house alone was that she was

preoccupied with not running into her ex-husband, "so if I have to go out I go out with my kids." Record at 1087.

Littlejohn relies on a Medical Source Statement form completed on November 5, 2018, by her treating general practitioner, Laura Robinson, MD.  Dr. Robinson checked off that Littlejohn suffered from moderately severe pain and would consequently miss more than five days of work each month and be off-task due to her pain 50% of the workday.  Record at 947-8. She checked off that Littlejohn would need to "lie down due to pain, fatigue, or other impairment," and wrote that this would be needed "approximately 2-3 times per day for an hour."  Record at 948.  Nevertheless, Dr. Robinson gave no indication of the extent to which these limitations were caused by migraines, as opposed to the asthma, hypersomnolence, right shoulder pain, or ankle pain she also listed as Littlejohn's impairments.  Record at 947.  The ALJ did not find Dr. Robinson's report persuasive.  Record at 33.

Further, the ALJ was entitled to rely on the opinion of John Simmons, MD, an agency reviewing physician.  Dr. Simmons did not see the most recent neurology reports, since he issued an opinion on November 28, 2018, but he did see the medical record before that date.  Record at 141-2.  Although he listed migraines as one of Littlejohn's impairments, he nevertheless found her capable of light work.  Record at 140, 141-2.  The ALJ found Dr. Simmons' report "generally consistent with the medical evidence of record," but issued a more forgiving RFC assessment, with additional physical limitations.  Record at 34.

Thus, there is certainly medical evidence supporting the existence of severe migraines. Further, the ALJ's explanation for his rejection of Littlejohn's description of the frequency and severity of her headaches could have been better.  Even if the ALJ's explanation was so inadequate as to constitute error, however, remand is not necessary where it would not affect the

outcome of a case. *Rutherford v. Barnhart*, 399 F.3d 546, (3d Cir. 2005). Here, the evidence of record, read as a whole, makes it reasonably clear that remand for the ALJ to further explain his opinion would not result in an award of benefits. For that reason, I will not order remand.

V.     *Conclusion*

        In accordance with the above discussion, I conclude that the Plaintiff's Request for Review should be DENIED, and judgment entered in favor of the Commissioner.

                                        BY THE COURT:


                                        */s/ Scott W. Reid*

                                        _____
                                        SCOTT W. REID
                                        UNITED STATES MAGISTRATE JUDGE